# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 21-4511 |
| TIMOTHY D. WARREN, and TITAN | : | |
| MEDICAL COMPLIANCE, LLC, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

**Goldberg, J.**                                                                                                         **July 13, 2022**

In this unnecessarily protracted case, Plaintiff the United States of America ("Plaintiff" or the "Government") has brought claims under the False Claims Act against Defendants Timothy D. Warren and his wholly-owned company Titan Medical Compliance, LLC ("Titan Medical") (collectively, "Defendants"). Defendants have moved to transfer venue, pursuant to Federal Rule of Civil Procedure 28 U.S.C. § 1404(a), to the United States District Court for the District of Kansas. For the following reasons, I will deny Defendants' Motion to Transfer.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Allegations in the Complaint

The claims at issue arise out of events between the years of 2014 and 2018 when Defendants allegedly falsely promoted auricular electro-acupuncture devices, specifically the P-Stim, ANSiStim, and Stivax devices, as reimbursable by Medicare, and other federal insurers, and as approved by the Food and Drug Administration ("FDA"). According to the Complaint, even though such devices were not approved by the FDA or reimbursable by Medicare, Defendants were paid thousands of dollars to convince medical providers that they could reap profits by billing federal insurers for these devices. (Compl. pp. 1–2.)

According to the Complaint, this scheme was carried out across the United States. The Complaint gives three specific examples of Defendants' interactions with medical providers that resulted in false claims: one in Pennsylvania, one in Texas, and one in Tennessee. (Id. ¶¶ 146–222.) With respect to the Pennsylvania claims, the Complaint alleges that Defendants gave coding advice about the Stivax device to Sagi Kuznits, M.D., a board-certified neurosurgeon with multiple locations in Pennsylvania, causing Dr. Kuznits to submit over fifty false claims to Medicare, for which Medicare paid nearly $400,000. (Id. ¶¶ 147–59.)

  **B.** **Procedural History**

On October 14, 2021, Plaintiff, the United States of America, filed a Complaint against Defendants, alleging violations of the False Claims Act. By stipulation of the parties, Defendants were given an extension until December 14, 2021 to file a responsive pleading, and then a second extension until January 14, 2022.

On December 30, 2021, defense counsel, Brem Moldovsky, submitted a letter requesting leave to withdraw based on Defendants' failure to either communicate with him or pay the contractual fees owed to counsel's firm. I held a status conference with the parties and counsel to address defense counsel's letter. At that time, Plaintiff indicated that the parties had engaged in significant settlement discussions and that Plaintiff was awaiting certain documentation from Defendants in order to finalize the settlement. Defense counsel confirmed that such discussions had occurred and that he had been attempting to obtain the required documentation from Defendants. Defendant Dr. Timothy Warren explained that he had suffered some recent personal tragedy and needed some additional time to comply with Plaintiff's requests.

Based on the representations at the conference, I issued an order denying defense counsel leave to withdraw and granting Defendants thirty days—until the end of February 2022—in which to file an answer to the Complaint. I also directed that, if the case did not settle prior to the answer deadline, defense counsel could renew the request to withdraw.

During a follow-up status conference on March 1, 2022, Defendants discussed their intent to file a motion to dismiss but noted that they were still interested in settling the matter without further litigation. Plaintiff's counsel responded that before the case could be resolved, the Government still needed previously-requested documentation from Defendants in order to perform an ability-to-pay analysis. Based on assurances from Defendants that they would promptly turn over these documents, I issued an order which again stayed the deadline for Defendants to file a responsive pleading. During the thirty-day stay, I directed Defendants to immediately produce all documents requested by Plaintiff for the ability-to-pay analysis.

Notwithstanding this Order, Plaintiff reported, by way of a March 31, 2022 letter, that it had not received a substantial number of documents requested and, as such, could not complete its ability-to-pay analysis. Defendants responsive letter conceded they had not yet turned over all of the documents but had turned over at least some of the requested information. Defendants' letter further indicated that Dr. Warren's personal tragedy in January 2022 had inhibited his ability to gather the required information. Based on the parties' letters, and not wishing to delay the matter any further, I issued a March 31, 2022 Order giving Defendants five business days in which to file either an answer to the complaint or a motion pursuant to Federal Rule of Civil Procedure 12(b)(6).

On April 6, 2022, Defendants filed a lengthy motion to dismiss for lack of personal jurisdiction, improper venue, failure to join necessary parties, and failure to state a claim, or, in the alternative, to transfer venue for *forum non conveniens*. Shortly thereafter, on May 4, 2022, the parties submitted a joint stipulation noting that the parties had continued to confer in good faith and agreed to the following:

> 1. The United States agrees to voluntarily dismiss Count III (Payment by Mistake of its Complaint [Dkt. No. 1];
> 2. Defendants agree to withdraw the Motion [to Dismiss];
> 3. The Parties agree to preserve Defendants' ability to raise arguments under 28 U.S.C. § 1404(a) to transfer the case to the District of Kansas up to the final pretrial conference (although the United States does not concede the merits of any such arguments and reserves all of its defenses to and arguments against any transfer motion); and

> 4. Defendants shall answer the Complaint within 60 days of this stipulation.

(ECF No. 25.)

Defense counsel submitted another letter, dated May 26, 2022, seeking leave to withdraw based on Defendants' complete lack of cooperation or communication with counsel, as well as Defendants' refusal to pay counsel for services rendered. On June 6, 2022, I issued an Order denying defense counsel's request for leave to withdraw and directing that Defendants file an answer to the Complaint by July 6, 2022, with no further extensions to be granted. The Order further stated that:

> Defendants are put on notice that defense counsel retains an obligation under Federal Rule of Civil Procedure 11(b) to only file pleadings that are factually and legally substantiated. As such defense counsel cannot file an answer without Defendants' full and complete cooperation and willingness to provide the required information. If defense counsel cannot file an answer due to Defendants' lack of communication, lack of candor, or refusal to fully participate, counsel shall so notify the Court. Defendants are advised that default may be entered against them and in favor of the Government if an answer is not filed due to Defendants' lack of cooperation.

(ECF No. 26.)

On June 14, 2022, Defendants renewed their motion to transfer venue to the District of Kansas. Subsequently, on July 6, 2022, Defendants filed an answer.

## II.     DISCUSSION

Defendants seek transfer to the United States District Court for the District of Kansas, which is the home domicile of individual Defendant, Dr. Warren. Dr. Warren—who is also the sole owner of Defendant Titan Medical—claims that he resides in Kansas and has experienced a great deal of difficulty and financial hardship in having to travel halfway across the country at regular intervals to meet with counsel, participate in the litigation, and attend case events. Moreover, he contends that many of the witnesses are located in Kansas, which will cause further hardship for purposes of a trial. He asserts that there would be no imbalance or inequity to Plaintiff, the United States of America, if the matter is

transferred to Kansas. Plaintiff, the United States of America, opposes the transfer, contending that Defendants have not met their burden of proving that transfer is warranted.

Under 28 U.S.C. § 1404(a), a district court may transfer an action to any other district "where it might have been brought" if this transfer is "for the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); see also In re Genentech, Inc., 566 F.3d 1338, 1341–42 (Fed. Cir. 2009). The determination of whether to transfer venue pursuant to § 1404(a) is governed by federal law. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877–878 (3d Cir. 1995). The party seeking transfer bears the burden of proving that transfer is proper. Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp., 230 F. Supp. 2d 655, 658 (E.D. Pa. 2002) (citing Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973).

Analysis of a request for a § 1404(a) transfer has two components. First, both the original venue and the requested venue must be proper. Jumara, 55 F.3d at 879. Venue is proper in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) a judicial district in which a substantial part of the property that is the subject of the action is situated. 28 U.S.C. § 1391. A business entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." Id. § 1391(c)(2); see also Johnson v. Equifax Info. Servs., LLC, No. 17-cv-066, 2017 WL 2779568, at *2 (E.D. Pa. June 27, 2017).

Second, the purpose of allowing § 1404(a) transfers is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Mosaid Techs., Inc. v. Sony Ericsson Mobile Commc'ns (USA), Inc., 885 F. Supp. 2d 720, 723 (D. Del. 2012) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (further quotations omitted)). Accordingly, the court must undertake a balancing test comprised of various public and private interest factors. Jumara, 55 F.3d at 879. Analyses of transfers under § 1404(a) are "flexible and

5

must be made on the unique facts of each case." Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 227 (D.N.J. 1996) (internal quotations omitted). The court's discretion is broad in deciding whether to transfer. Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 458–59 (E.D. Pa. 2013).

As an initial matter, I must determine whether venue is proper in both the current forum—the Eastern District of Pennsylvania—and the proposed transferee district—the District of Kansas. The general venue statute contained in 28 U.S.C. § 1391 governs False Claims Act claims. Nathan v. Takeda Pharms. U.S.A., Inc., No. 18-cv-4547, 2019 WL 3216613, at *2 (E.D. Pa. July 17, 2019). Moreover, the venue provision of the False Claims Act, 31 U.S.C. § 3732(a), states that venue is proper "in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a).

Venue is proper in the Eastern District of Pennsylvania because the Complaint alleges that one of the proscribed acts taken by Defendants occurred in Pennsylvania. Venue is similarly proper in the District of Kansas because Defendants reside there.[1]

Having determined that both judicial districts can appropriately exercise venue over this matter, I must now analyze whether the balance of conveniences weighs in favor of transfer. Under Jumara, the court must consider numerous private interests, including: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. Id. at 879. The court must also weigh several public interests including: (1) the enforceability of the judgment; (2) practical

---

[1] Defendants baldly suggest that venue is improper in the Eastern District of Pennsylvania. They contend that the case must be transferred to the District of Kansas under 28 U.S.C. § 1406. I disagree. Aside from the fact that, by stipulation, Defendants withdrew their Rule 12(b) motion to dismiss for improper venue under 28 U.S.C. § 1406 and preserved only their right to seek transfer under § 1404, Defendants disregard the venue provision within the False Claims Act.

considerations that could make the trial easy, expeditious, or inexpensive; (3) considerations of administrative difficulty resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  Id.

      A.      Plaintiff's Forum Preference

The analysis begins with an examination of Plaintiff's choice of venue, as manifested by where the suit was originally brought.  As a general rule, a plaintiff's choice of venue is of paramount consideration and "should not be disturbed lightly," particularly where the plaintiff is a resident of the district in which the case is brought.  In re Amkor Tech., Inc. v. Sec. Litig., No. 06-cv-298, 2006 WL 3857488, at *3 (E.D. Pa. Dec. 28, 2006) (quoting Weber v. Basic Comfort, Inc., 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001)).  Where the plaintiff is the federal government, however, it does not receive as much preference as a private plaintiff because the government is not a resident of any particular state.  United States v. Klearman, 82 F. Supp. 2d 372, 375 (E.D. Pa. 1999).

Nonetheless, I find that Plaintiff's choice deserves some weight here.  The Government's nationwide investigation into Defendants' actions was led by the United States Attorneys' Office for the Eastern District of Pennsylvania.  Transfer of the case will result in either (a) a new U.S. Attorneys' Office having to familiarize itself with and take over the case, or (b) requiring the current U.S. Attorneys to travel to Kansas to litigate the matter.  Accordingly, I will give some weight to Plaintiff's forum preference and find that it leans against transfer.

      B.      Defendant's Forum Preference

The second factor—Defendants' forum choice—is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another."  EVCO Tech. and Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003) (citations omitted).  Although I recognize that Defendant is an individual and sole owner of Titan Medical, both of which are residents of Kansas, technology alleviates many of the burdens of

7

travelling for court appearances. In fact, Dr. Warren has already appeared via Zoom for court proceedings, and has given his pre-complaint investigation testimony to the Government via remote deposition.

Moreover, to the extent that Dr. Warren claims that he has experienced hardship by not having counsel in Kansas, I give no weight to this argument. As reflected throughout the procedural history of this matter, Dr. Warren has shown no inclination to work with counsel, regardless of counsel's location. Defense counsel's own letters reveal that Dr. Warren has been unresponsive to phone calls, emails, Zoom requests, etc. Moreover, defense counsel has requested to withdraw no less than three times in this case, indicating that counsel's location should not bear on the analysis. As such, I find that this factor is not entitled to any weight.

      C.      Whether the Claim Arose Elsewhere

As to where the claims arose, the relevant inquiry for purposes of a transfer motion is where is "the center of gravity of the dispute, its events and transactions." See Park Inn Int'l, L.L.C. v. Mody Enters., Inc., 105 F. Supp. 2d 370, 377 (D.N.J. 2000). The Complaint here claims that Defendants engaged in a nationwide scheme that arose in multiple districts. Indeed, although Dr. Warren may have initiated his plans in Kansas, he completed them in other states. The Complaint specifically describes an extensive scheme involving Dr. Kuznits, a medical practitioner in Pennsylvania. Accordingly, at least some portion of the claims arose here. In fact, as noted by Plaintiff, Dr. Warren has already been sued by private parties in the Eastern District of Pennsylvania in connection with the Kuznits scheme, and he defaulted in that proceeding. Defendants identify no similarly-relevant transactions that occurred in Kansas. Accordingly, I deem this factor to weigh against transfer.

      D.      Convenience of the Parties and Party Witnesses as Well as Non-Parties

The convenience of the parties and witnesses factor is in equipoise and weighed neither for or against transfer. The only party with any connection to Kansas is Defendants. Although Defendants baldly contend that most of the witnesses are located in Kansas (Defs.' Resp. 4), Defendants do not

identify who any of those witnesses might be. Quite to the contrary, the Complaint refers to multiple other participants and/or actors in the scheme, most of whom are located outside of Kansas, and many of whom are located within Pennsylvania.

Moreover, with respect to non-party witnesses, the convenience of non-party material witnesses "is a particularly significant factor in a court's decision whether to transfer." Idaseima v. Wabash Metal Prods., Inc., No. 01-cv-97, 2001 WL 1526270, at *2 (E.D. Pa. Nov. 29, 2001). As Plaintiff notes, it will likely rely heavily on government-employee witnesses from federal healthcare programs, most of which are located in and around Washington, D.C., which is a short distance from the Eastern District of Pennsylvania. Therefore, this factor weighs against transfer.

### E.  Location of Books and Records

The final private factor is the location of books and records. Generally, this factor is given little weight "as technological advances 'have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another.'" Papbst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp., 126 F. Supp. 3d 430, 443 (D. Del. 2015) (quoting Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc., No. 01-199, 2001 WL 1617186, at *3 (D. Del. 2015)).

As neither party makes an argument under this factor, I find that it has no bearing on my analysis.

### F.  The Public Factors

The public interests identified in Jumara include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) considerations of administrative difficulty resulting from court congestion; (4) the local interest in deciding controversies at home and the public policies of the fora; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. Id.

Of these factors, numbers four and five have no bearing on my analysis. This case has been brought under federal law to enforce federal interests. As such, state laws and policies have no weight in the decision.

Likewise, factor one will not weigh in the analysis. Defendants are citizens of the United States. Therefore, a judgment entered against them in any federal court will be enforceable.

Finally, under factors two and three, I must consider the practical considerations that could make the trial easy, expeditious, or inexpensive, as well as considerations of administrative difficulty resulting from court congestion. On these points, Defendants do not suggest why the District of Kansas would be a better forum. By contrast, the Eastern District of Pennsylvania is well equipped to handle this litigation. This case has been pending before me since October of 2021, during which I have held numerous conferences and entered multiple case management orders. Defendants have recently filed an answer here and, according to Plaintiff, it is prepared to file an early case-dispositive motion. There is no sound basis to require another judge in the District of Kansas to familiarize him or herself with these already protracted proceedings.

### III. CONCLUSION

At its core, Defendants' Motion is premised on nothing more than their desire to litigate in Dr. Warren's home state. Given the already lengthy proceedings before me, the in-depth involvement of the Assistant U.S. Attorneys from the Eastern District of Pennsylvania, and Dr. Warren's commission of alleged offenses within Pennsylvania, I find that Defendants have failed to meet their burden of establishing that transfer is warranted under § 1404(a). Accordingly, I will deny Defendants' Motion.